# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) GOVERNMENT EMPLOYEES INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-08-1140-C |
| (1) JEFFERY QUINE and, (2) TRACIE QUINE, individually and as natural parents of (3) AMANDA WATKINS, a minor, | ) ) ) ) ) | |
| Defendants. | ) ) | |

---

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY ADJUDICATION

---

Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
MANSELL ENGEL & COLE
101 Park Avenue, Suite 665
Oklahoma City, Oklahoma 73102
(405) 232-4100 Phone
(405) 232-4140 Fax
E-mail:  mansell-engel@coxinet.net
ATTORNEYS FOR DEFENDANTS

## INDEX

BRIEF FACTUAL HISTORY ................................................................................ 1

DEFENDANTS' STATEMENT OF MATERIAL UNDISPUTED FACTS ......... 2

ARGUMENT AND AUTHORITY ...................................................................... 7

GEICO IS OBLIGATED TO UNCONDITIONALLY PAY BENEFITS
THAT IT ADMITTEDLY OWES ITS INSURED ................................................ 7

## **TABLE OF AUTHORITIES**

### **CASES**

*Burch v. Allstate*, 1998 OK 129, 977 P.2d 1057 ..................................................... 9, 11, 13

*Buzzard v. Farmers*, 1991 OK 127, 824 P.2d 1105 ....................................... 11, 12, 13, 14

*Christian v. American Home Assurance,* 577 P.2d 899 (Okla. 1977) ....................... 12, 13

*Hatfield v. Liberty Mutual Ins. Co.*, 98 Fed. Appx. 789 (10th Cir. 12004) ............... 10, 16

*Manis v. Hartford Fire Ins. Co.*, 1985 OK 25, 681 P2d 760 .......................................... 15

*Newport v. USAA*, 2000 OK 59, 11 P.3d 190 ................................................ 12, 13, 15, 16

*Pentz v. Davis*, 1996 OK 89, 927 P.2d 538 ............................................................. 9, 15, 17

*Thompson v. Shelter Mut. Ins. Co.*, 875 F.2d 1460 (10th Cir. 1989) ..................................... 9

*Timmons v. Royal Globe Ins. Co.*, 1982 OK 97, 653 P.2d 907 ......................................... 13

### **STATUTES**

36 O.S. § 3636 ................................................................................................ 9, 12, 15, 17

35 O.S. §3636(C) ........................................................................................................... 14

## <u>OTHER PUBLICATIONS</u>

Ashley, *Bad Faith Actions, Liability & Damages* (5th ed. September 2008 Supp)
§ 5:16..............................................................................................................10

Schermer & Schermer, *Automobile Liability Insurance* (4th ed. May 2009 Supp)
§ 15:9 ............................................................................................................10

1 Windt, *Insurance Claims and Disputes:  Representation of Insurance Companies &
Insureds* (5th ed. March 2009 Supp) § 2:22 ...........................................................10

## DEFENDANTS' MOTION FOR
## PARTIAL SUMMARY ADJUDICATION

Defendants respectfully move the Court for a partial summary adjudication on the issue of Plaintiff's obligation to unconditionally pay amounts that it admits it owes under the uninsured motorist ("UM") policy issued to Defendants. The alleged lack of such an obligation is one of the issues GEICO has raised in its declaratory judgment action. *See, e.g.*, Joint Status Report and Discovery Plan (Doc. No. 15), Plaintiff's Contentions at p. 3, stating in pertinent part that "GEICO contends that when the value of a UM claim is disputed, as here, it is not obligated to pay its insured what Mr. Self has referred to as "undisputed amounts" prior to full and final settlement of the insured's UM claim."

Defendants respectfully submit that when its insured is fault-free, has an valid underinsured motorist claim, and is owed some amount of benefits by GEICO under the insured's UM policy, all of which are admittedly true in this case, GEICO not only has a duty to evaluate the claim, but to unconditionally pay the amount it determines it owes its insured. GEICO cannot condition payment of benefits which it admittedly owes upon its insured's agreement to release their claim for all amounts exceeding GEICO's evaluation. Defendants therefore seek partial summary adjudication in their favor on that issue.

## BRIEF FACTUAL HISTORY

Fourteen year-old Amanda Watkins was a passenger in the back seat of her mother's vehicle when she was injured in a rear-end automobile collision caused by an underinsured motorist. Amanda, who was admittedly fault-free, suffered a bulging disc in her neck. She required substantial medical care over a 2 ½ year period, including

physical therapy and over 20 trigger point injections in her neck to help relieve the pain. 3 1/2 years later, the bulging disc in her cervical spine still causes her pain and disability.

GEICO admits that Amanda has valid UIM claim.  It also admits that it owes her some amount of money.  However, it refuses to pay her any UIM benefits unless she agrees to its settlement offer and releases all amounts she claims entitlement to above its offer.  Defendants assert that GEICO cannot hold the benefits that it admittedly owes its insured hostage until she agrees to its number and signs a release.  As a matter of law, Defendants submit that GEICO has an obligation to evaluate Amanda's claim and unconditionally pay her the amount it believes it owes under Defendant's UM policy.

## DEFENDANTS' STATEMENT OF MATERIAL UNDISPUTED FACTS

1.      GEICO issued a policy of UM/UIM insurance to Jeffery A. Quine, Policy No. 0783 73 02 03 ("the policy").  The policy was in force and effect on November 19, 2005, and it provided UM/UIM limits of $100,000/$300,000 [See GEICO's Motion for Summary Judgment (Doc. No. 28), material undisputed fact no. 1; GEICO policy, Ex. 1].

2.      On November 19, 2005, Amanda Watkins was involved in an accident while a passenger in the back seat of a vehicle being driven by her mother, Tracy Quine [Police report, Ex. 2, Quine 378-381, claim file notes dated 12/9/05 and 12/16/05, Quine 417, Ex. 3].  The vehicle Amanda was riding in was insured under the policy [Ex. 1].

3.      Amanda sustained injuries in the above-reference accident, including a bulging disc in her cervical spine.  Indeed, the testimony of GEICO's adjuster, as well as the information in its claim file and the report of the physician it hired to examine Amanda, makes it clear that GEICO has no information indicating that her bulging

cervical disc was a pre-existing condition [Nelson depo., Ex.4 at p. 146; GEICO *"Burch"* evaluation, Quine 422-424 at p. 424. Ex. 5; claim file note dated 3/20/06, Quine 411, Ex. 3; Report of Dennis Foster, M.D., Ex. 6].

4.      As a result of the injuries she received in the accident, Amanda has incurred medical expenses to date in the amount of $9.904.05 [Ex. 5 at Quine 422].

5.      At the time of the accident, Amanda was an "insured" under the policy for UM/UIM benefits (see UM policy definition of "insured," Ex. 1 at p. 10 of 15].

6.      Lam Tran, the tortfeasor who caused the accident in which Amanda was injured, is admittedly an underinsured motorist.  See stipulations in Joint Status Report and Discovery Plan.  Therefore, Amanda has a valid UIM claim [See Ingling depo., Ex. 7, pp. 100, 111, 117, 124 and 138; Nelson depo., Ex. 4, p. 66].

7.      Amanda Watkins, as a minor and a passenger in her mother's car at the time of the collision, was completely without fault [See stipulations in Joint Status Report and Discovery Plan and Plaintiff's complaint, paragraphs 7 and 8; claim file note, Ex. 3, p. Quine 415; Nelson depo., Ex. 4, p. 64].

8.      GEICO's adjuster, Karlyn Nelson, admits that that Amanda has a valid UIM claim, that the policy was in force, that the wreck was not her fault, and that she definitely had a bodily injury from the wreck [Nelson depo. Ex. 4, p. 120].

9.      GEICO's Regional Liability Administrator, Richard Ingling, admits that GEICO owes Amanda some amount of UIM benefits under the policy [Ingling depo., Ex.

7, pp. 100, 111, 117, 124, 137-138. *See also*, Nelson depo., Ex. 4, p. 120].[1] GEICO reserved the claim value at $11,330 an amount its adjuster thought was a fair and reasonable amount for Amanda's claim [Nelson depo., Ex. 4, pp. 39-41].

10.     GEICO admits that under *Burch v. Allstate Insurance Co.*, 1998 OK 129, 977 P.2d 1057 (1998), it has a duty to promptly investigate, place a value on the claim, and pay benefits [*See* Ingling depo., pp. 94-96, Ex. 7, admitting that under *Burch*, GEICO is obligated to promptly investigate, evaluate, and pay benefits. *See also*, Nelson depo., pp. 29-30, 108-109, Ex. 4, testifying to the same effect].

11.     GEICO's claim practice is to refuse to pay any UM/UIM benefits unless it gets a release of all claims [Ingling depo., Ex. 7, pp. 89, 104-105, 108, 130-131; Nelson depo., Ex. 4, pp. 99-100, 109-110, 139].[2] However, GEICO's own Regional Liability Administrator does not believe there is anything in GEICO's policy that would allow GEICO to withhold payment until a release is signed [Ingling depo., pp. 88-90, Ex. 7]. Nor does he think the policy say that GEICO can withhold the insured's money until the insured agrees with GEICO's number [*Id*. at pp. 89-90, Ex. 7].

12.     As of March 2009, GEICO will sometimes make an advance payment of "undisputed" medical bills in UM claims without demanding that the insured settle the

---

[1] As Regional Liability Administrator, among other things, Mr. Ingling has responsibility for all of the coverage decisions and authorizations to deny claim coverage and authorization to extent dollar amounts in cases up to the regional level. He reviews all cases in litigation that are prepared for trial or after suit is filed and consults with underwriting on the policy contracts and their revisions [Ingling depo., p. 6, Ex. 7].

[2] While Ms. Nelson said she was not "clear on" what Mr. Self was calling an "undisputed amount" she never asked him to clarify what he meant [*Id*. at pp. 99-100], probably because it did not matter since GEICO would not pay anything without a release.

entire case or requiring its insured to sign a release [Ingling depo., Ex. 7 at pp. 10-11]. This new procedure was instituted at GEICO the *same month* that Mr. Ingling filed an Affidavit with this Court explaining how UM was **not** intended [according to GEICO] as some sort of piecemeal coverage [Ingling deposition, Ex. 7, pp. 10-11, 26-27, 32-33].[3]

13.     GEICO adjusters can evaluate bodily injury claims.  That is what UM carriers are supposed to do when they get a claim from their insured [Ingling depo., Ex 7, pp. 95-97, 110; Nelson depo. Ex. 4, pp. 27, 29, 67, 106, 108-109, 122, 133].  GEICO's adjusters evaluate bodily injury claims every day [Nelson depo., Ex. 4, p. 27; Ingling depo., Ex. 7, p. 110].

14.     GEICO is in the business of placing a value on bodily injury and property damage claims.  GEICO's claim adjusters are allegedly trained and competent to do so [*See* Ingling depo., Ex. 7, pp. 68-70; and Nelson depo., Ex. 4, p. 27].[4]  In fact, GEICO has

---

[3]  GEICO's new claims procedure can best be characterized as a "don't ask, don't tell" policy.  GEICO does not tell its insureds that it exists, and only pays "undisputed medical bills" if the insured specifically asks for such a payment [Ingling depo., Ex. 7, p. 55; Nelson depo., Ex. 4, pp. 32-33].  This secret new procedure generally applies in UM, as opposed to UIM, cases [Ingling depo., Ex. 7. at p. 53].  When it is used, GEICO allegedly pays "undisputed medical bills" even if those bills have already been paid by med pay or health insurance coverage [*Id.* at pp. 54, 76].  However, GEICO will not pay "undisputed medical bills" if the tortfeasor's liability carrier has previously settled the claim in excess of the amount of those bills [*Id.* at pp.15-16].  Mr. Ingling, was the person who implemented GEICO's secret new claims procedure [*Id.* at p. 11].  He testified that although GEICO's insurance policy did not change, he implemented the secret new procedure because GEICO's duty of good faith and fair dealing required it [*Id.* at pp. 50-52].  However, nowhere does he explain why or how GEICO's same duty of good faith and fair dealing does not apply to other "undisputed" elements of an insured's damages.

[4] In fact, GEICO's Regional Liability Administrator, Mr. Ingling, considers himself to be somewhat of an expert on evaluating bodily injury claims, although this claim was not big enough to come to his level [See Ingling depo., Ex. 7, pp. 83-85].  Ms. Nelson's

a computer software program known as "Claim IQ" it uses to help adjusters evaluate damages in certain claims.   After the adjuster inputs the data the program gives the adjuster an evaluation range for the case [Ingling depo., Ex. 7, pp. 77-83].[5]

15.   GEICO's evaluation is expressly called a *"Burch"* evaluation after the Oklahoma Supreme Court case requiring UM insurers to promptly investigate, evaluate and pay first party claims [Ingling depo., Ex. 7, p. 94].   Ms. Nelson's first *"Burch"* evaluation of this claim [Ex. 5], occurred in May 2008 when she received Mr. Self's settlement demand [Nelson depo., Ex. 4, p. 41].   Her second evaluation [Ex. 8], occurred after she received Amanda's prior medical records [*Id.* at p. 47].   Her third evaluation [Ex. 9], occurred after she received Dr. Foster's report [*Id.* at p. 50]

16.   GEICO's adjuster agrees that she should look at the information and try to come up with a fair amount to pay on a claim and that she has a duty and a responsibility to place a value on the claim [Nelson depo., Ex. 4, pp. 67, 106, 108-109, 122, 133].

17.   GEICO understands and agrees that the proper claims standard on a first party claim is that payment must be made when liability for the claim becomes reasonably clear [Ingling depo., Ex. 7, pp. 113-117; Nelson depo., Ex. 4, pp. 30-32].

18.   When it became clear that GEICO would not offer a reasonable amount for Amanda's claim, her attorney at the time, Mr. Self, asked GEICO to send the amount that

---

supervisor, Mark Euziere, is also "to some degree an expert" [*Id.* at p. 84].   Although Ms. Nelson is not considered to be an expert on evaluating bodily injury claims, she has a lot of experience in evaluating claims and is very closely supervised by Mr. Euziere [*Id.*].

[5] GEICO does not use Claim IQ on first-party claims in Oklahoma, nor, apparently, in other states with bad faith exposure [Ingling depo., pp. 77-78, 82, Exhibit 7].

GEICO itself believed to be undisputed and owing [See Mr. Self's 10/2/08 letter, Ex. 10; Nelson depo., Ex. 4, pp. 98-102].

19.     GEICO refused, claiming it has no obligation to pay any amount unless the insured executes a full and complete release [See Nelson depo., Ex. 4, p. 100]. However, as previously noted, Mr. Ingling does not believe that anything in GEICO's policy states that a release is a precondition to payment of UM/UIM benefits [Ingling depo., Ex. 7, p. 88-90]. The only justification advanced by GEICO for this claim practice is that it wants to resolve the claim and get the file closed to reduce GEICO's administrative expenses [*See* Ingling depo., Ex. 7, pp. 35-36; Nelson depo., Ex. 4, pp. 113-116].

20.     Amanda and her attorney cooperated fully with GEICO in its investigation [Nelson depo., Ex. 4, pp. 65, 69-70].

21.     GEICO's Regional Liability Administrator believes GEICO has a duty to its insured to determine an undisputed amount [Ingling depo., Ex. 7, pp. 139-140].

## ARGUMENT AND AUTHORITY

### GEICO IS OBLIGATED TO UNCONDITIONALLY PAY BENEFITS THAT IT ADMITTEDLY OWES ITS INSURED

GEICO asks this Court to sanction a claim practice which allows it to refuse to determine and pay a reasonable value for its first-party insured's UM/UIM claim unless and until the insured agrees to GEICO's number and signs a release. In order to receive **any** of the policy benefits which were contracted for, and for which premiums have been paid, GEICO's position is that its insured has to give up their claim for all amounts they believe they may be entitled to over the amount of GEICO's offer. The only possible

reason for this claim practice is to pressure the insured to settle the claim for what GEICO wants to pay. Realizing how ugly this looks, GEICO will not admit that is what it is doing [Ingling depo., Ex. 7, pp. 108, 121, 125, 129 and 136]. Instead, GEICO argues that it does not know how much to pay because the claim is disputed since the insured does not agree with GEICO's number [Ingling depo., Ex. 7, pp. 125, 129 and 136]. GEICO pretends that it is presented with a conundrum – the unsolvable mystery of how to evaluate, place a number on, and pay a bodily injury claim. GEICO's claim that it does not know how to evaluate and pay the claims of its insureds is simply silly. Evaluating claims and elements of claims, as well as putting numbers upon and paying them, is what GEICO's adjusters do every day. It is also what is required of GEICO.

Although GEICO has tried to make the issue before the Court more complicated than it is, the real issue is not that complex. Simply stated, the issue GEICO has raised is whether, when it **admittedly** owes its insured some amount of UM/UIM benefits, it can nonetheless refuse to pay its insured anything unless the insured agrees with its overall evaluation of the claim and agrees to sign a full and complete release of all claims exceeding the amount of that evaluation.[6]  Under Oklahoma law, it is respectfully

---

[6] In a third-party (liability) claim, conditioning settlement upon the execution of a release makes sense since the carrier is seeking to protect its **insured** from any further liability arising out of the claim at issue. However, that is not true in a first-party claim, such as this claim. In the first party context, the insurer is simply seeking to protect **itself,** and to limit its liability for otherwise covered claims, when it tries to precondition payment of policy benefits that it owes its insured upon the requirement that the insured execute a release. That type of conduct seems wholly inconsistent with the duty of good faith and fair dealing imposed upon first party insurers. Indeed, apart from UM, it is unlikely that GEICO will be able to cite any other type of first party insurance coverage where the carrier routinely and as a matter of practice requires the insured to sign a release before it

submitted that GEICO cannot condition payment of benefits that it admittedly owes its insured upon the insured's capitulation to its demands.

UM coverage is first party coverage, *Pentz v. Davis*, 1996 OK 89, 927 P.2d 538, 541,[7] and a UM carrier has "the responsibility to protect its injured insured by good faith and fair dealing, including swift payment, from and after the time of injury." *Pentz*, 927 P.2d at 541-542. "The UM carrier must promptly investigate, place a value on the damage claim and pay UM benefits without regard to whether liability benefits have been paid. *Burch v. Allstate Ins. Co*, 1998 OK 129, 977 P.2d 1057, 1061. "Swift payment under a UM policy for undisputed amounts suffered by an injured insured fulfills the express purpose of [36 O.S.] § 3636 – protection of insured persons injured by uninsured/underinsured motorists." *Pentz*, 927 P.2d at 542.

In Oklahoma insurers have a duty to make swift payment of undisputed amounts. *Pentz*, 927 P.2d at 542. Nor may insurers withhold payment of undisputed amounts they owe in order to force its insured to disadvantageously settle his or her claim for other disputed benefits. *E.g., Thompson v. Shelter Mut. Ins. Co.*, 875 F.2d 1460, 1462 (10th Cir. 1989) (stating that "[a]n unresolved dispute as to other policy claims does not as a matter of law excuse the failure of the insurer to pay living expenses when the liability

---

pays its insured the amount it believes is owed. Nor is it any answer to say that UM is somehow "different" because the insured's damages cannot be exactly ascertained. That is also true, at a minimum, in property damage cases. However, Defendants sincerely doubt that GEICO would ever try to condition payment of the amount it owed for property damage to an insured's vehicle upon the insured's execution of a release.

[7] Underinsured motorist coverage is statutorily included within the definition of uninsured motorist coverage. *Burch*, 977 P.2d at 1063.

for such benefits is undisputed"). *See also*; *Hatfield v. Liberty Mutual Ins. Co.*, 98 Fed. Appx. 789 (10th Cir. 12004), noting that the trial judge had denied the insurer's motion for judgment as a matter of law because "there is evidence in this case from which a jury could find that Liberty Mutual conditioned payment of an admittedly undisputed amount on execution of an unlimited release which would have extinguished Mr. Hatfield's contractual stacking claim. Where there is a legitimate dispute as to one component of a claim, a jury may reasonably conclude that it is not reasonable to hold payment of the undisputed amount hostage to relinquishment of a legitimately disputed component of a the claim . . . ." *Id.* at 794. The Tenth Circuit agreed, stating:

> We agree. Liberty Mutual has not disputed that Hatfield was entitled to $25,000 under his policy, yet it refused to pay him that amount unless he signed the release. **A reasonable jury could decide that Liberty Mutual's withholding of payment was little more than an effort to take advantage of an insured in need of proceeds rightfully due him, and that there was no "legitimate dispute,"** ... to justify the failure to pay $25,000 [*Id.*] [citation omitted].[8]

---

[8] Insurance commentators addressing the issue also agree that UM carriers cannot, in good faith condition the payment of undisputed portions of a claim upon the insured's agreement to relinquish the disputed portion of the claim. *See, e.g.*, Schermer & Schermer, *Automobile Liability Insurance* (4th ed. May 2009 Supp) § 15:9 ("The general rule is that where coverage is not contested, but the amount of the loss is disputed, the failure of the insurer to pay the undisputed portion of the loss constitutes bad faith") (footnote omitted); Ashley, *Bad Faith Actions, Liability & Damages* (5th ed. September 2008 Supp) §5:16 ("An insurer ... has an obligation to pay the undisputed amount of a covered claim under a single coverage and not withhold that amount to force the insured to yield to the insurer's position regarding the disputed portion of the insured's claim" (footnote omitted); 1 Windt, *Insurance Claims and Disputes: Representation of Insurance Companies & Insureds* (5th ed. March 2009 Supp) §2:22, stating:

> When there is no dispute as to the existence of coverage for a portion of the insured's claim, the carrier should pay that amount. It should not withhold payment on the ground that there is a dispute as to the remainder of the

Since these core concepts are so clear, all GEICO can do is argue that if one cent of Amanda's total damages is disputed, all of her damages are disputed. That claim is inconsistent with Oklahoma law. There is nothing wrong with trying to reach a full and final settlement on a claim, but failure to settle the whole claim does not excuse insurers from making prompt payment of benefits for which liability has become reasonably clear. The insurer must promptly evaluate the claim and pay what it knows it owes.

The Oklahoma Supreme Court has explained the insurer's duty in a first-party UM claim very clearly. The duty is to "promptly investigate, place a value on the damage claim, and **pay** UM benefits…." *Burch*, 977 P.2d at 1061 [emphasis added]. In *Buzzard v. Farmers*, 1991 OK 127, 824 P.2d 1105, 1109, the Court explained that if the claim exceeds the amount available under the liability policy the UM carrier must take prompt action to determine what payment is due and may not delay the payment of UM benefits

claim. The only exception to that payment rule is when the undisputed portion is insignificant in comparison with the total amount that is claimed.

Similarly, the carrier should not condition the payment of that portion of the claim that it internally acknowledges is owed on the insured's either executing a release of the remainder of the claim or agreeing to accept a lesser sum than the insured believed himself or herself to be entitled to with regard to the remainder of the claim. The insurance company is not entitled to attempt to obtain an economic gain by making the payment of monies admittedly owed contingent on the insured giving up any rights.

If, therefore, the company either refuses to make a payment that it knows it owes or conditions its payment on the insured's providing it some benefit, the company should be held to have breached the insurance contract and may potentially be subject to statutory damages, punitive damages, and an attorney's fee award. Moreover, if the insurer does obtain a release under the circumstances described above, it will be unenforceable. The payment of an admitted liability is not consideration for an accord and satisfaction or compromise and settlement [footnotes omitted].

until the liability limits are exhausted.  The *Buzzard* Court stated that "Our ruling furthers the purpose of underinsurance by providing **quick payment** for an insured's losses." *Id.* [emphasis added].   In fact, most of the Oklahoma Supreme Court cases which have discussed the tort of bad faith, beginning with *Christian v. American Home Assurance,* 1977 OK 141, 577 P.2d 899 have repeatedly explained that delay in receiving payment and refusal by the insurer to pay the claim creates the very problem that the insured bought the insurance to avoid in the first place.  *See, e.g., Buzzard,* 824 P.2d at 1109.

GEICO's manipulation of Oklahoma law is based on its assertion that insurers have no duty under Oklahoma law to pay any part of the claim unless the parties agree on the total value of the claim.   In that regard, while GEICO's adjusters admitted that it would be improper to refuse payment of undisputed amounts to force compromise from its insureds, they could not identify even one other legitimate or practical reason why GEICO would refuse to pay benefits it knew to be payable under the policy.[9]  If GEICO wanted to treat its insured fairly and in good faith, why would it not pay any amounts it could reasonably determine to be payable?  Because it cannot come up with a legitimate explanation for failing to do so, GEICO studiously avoids answering that question.

---

[9] While GEICO says that "UM/UIM claims are settled once, not piecemeal or in parts," [GEICO's Motion for Summary Judgment at p. 24], nothing in the text of 36 O.S. § 3636 supports that assertion.  If anything, the Court's opinion in *Newport v. USAA,* 2000 OK 59, 11 P.3d 190, which upheld a bad faith verdict against the defendant UM insurer based in part upon evidence that the carrier refused to make **advance payment** of the insured's medical and funeral bills under the insured's UM coverage, undercuts GEICO's claim that UM is a "non-piecemeal" coverage.  *See Newport,* 11 P.3d at 197-198.  So too does the fact that GEICO itself engages in "piecemeal" settlement of UM claims in at least the two circumstances described at pp. 24-26 of GEICO's summary judgment motion.

The implied covenant of good faith and fair dealing has existed in all first party claims for at least the last 37 years. *See Christian, supra; Timmons v. Royal Globe Ins. Co.*, 1982 OK 97, 653 P.2d 907. The duty is very commonly described in terms of promptly investigating, evaluating and **paying** claims. "An insurer has an 'implied-in-law duty to act in good faith and deal fairly with the insured to insure that the policy benefits are received.'" *Newport*, 11 P.3d at 195 (citation omitted). The essence of a bad faith action "is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy". *Id.* (citation omitted). As noted above, the Oklahoma Supreme Court has specifically described the UM carrier's duty to include **paying** benefits (as opposed to "attempting to settle" the claim). *Burch*, 977 P.2d at 1061; *Newport*, 11 P.3d at 196 ("[A] duty to **promptly pay** a valid claim has been clearly recognized by this Court's jurisprudence since an insurer's duty of good faith and fair dealing was articulated in *Christian*, 577 P.2d 899....") (emphasis added). Conversely, no Oklahoma authority supports GEICO's claim that it can delay and condition payment of benefits it admittedly owes upon its insured's abandonment of any further claims for benefits that might exist under the policy.

A substantial part of the right purchased by an insured is the right to receive the policy benefits promptly. *E.g., Christian*, 577 P.2d at 903. "Unwanted delay precipitates the precise economic hardship the insured sought to avoid by purchase of the policy". *Id.* A claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient. *Buzzard*, 824 P.2d at 1109 (citing *Christian*). Here, there was never any doubt about the claim. Amanda was blameless and 100% of her

injuries were due to the negligence of an underinsured motorist. Oklahoma's UM statute is clear; UIM benefits are available whenever "the [tortfeasor's] liability limits ... are less than the amount of the [insured's] claim ...." *See* 36 O.S. §3636(C).[10] That is admittedly the situation here. However, notwithstanding the fact that this is a clear case in which UIM benefits are admittedly owed, some 3 ½ years later, Amanda still has not received anything under that coverage from the carrier that was paid a premium to insure her.

Since its recognition of first party bad faith claims, the Oklahoma Supreme Court has cited the public policy in favor of insurers making prompt payment of policy benefits as well as the impropriety of forcing insureds to go to court to receive the benefits they are known to be owed. However, despite these longstanding public policies, GEICO says it is perfectly proper for it to force its insureds to either agree to its evaluation, forgo all further claims and execute a release, or else file suit. GEICO's entire position flies in the face of the implied covenant of good faith and fair dealing as consistently described by the Oklahoma Supreme Court. Under its contract and under Oklahoma's implied covenant of good faith and fair dealing, **prompt payment** of undisputed benefits is required – not just an "attempt to settle" the whole claim in return for a release. Given the Oklahoma Supreme Court's numerous statements regarding the UM carrier's duty of

---

[10] If the claim exceeds the amount available under the liability policy, the UM carrier must take prompt action to determine what payment is due and may not delay the payment of benefits until exhaustion of liability limits because "**[t]o do so would frustrate the very purpose of underinsured motorist coverage - protection of the insured for loss incurred at the hands of an underinsured motorist.**" *Buzzard*, 824 P.2d at 1109 (emphasis added). Nonetheless, according to GEICO, it can delay its payment for as long as it takes unless and until the insured agrees to abandon the rest of his/her claim, agree to its evaluation, and agree to execute a full and complete release.

prompt payment and its repeated discussions concerning the legislative intent set forth in 36 O.S. § 3636, it is simply ridiculous for GEICO to assert that it can refuse payment of some reasonable amount on a claim that it **admits** it owes.[11]

GEICO has tried to justify its position under *Newport,* claiming that Oklahoma law only requires it to offer what its investigation reveals to be the claim's value. Indeed, this was a central issue in *Newport*, and so the Court there discusses the fact that it would be bad faith for an insurer to offer its insured less than its own evaluation of the claim. However, *Newport* does not say that once the insurer offers something within the range of a deficient evaluation, all other duties of good faith and fair dealing, such as the requirement that it "make swift payment of undisputed amounts," *Pentz, supra,* simply vanish. To the contrary, *Newport* emphasizes that the essence of a bad faith action is the insurer's unreasonable, bad faith conduct, including the unjustified withholding of **payment due** under a policy. 11 P.3d at 195. *Newport* also emphasizes that an insured's claim "must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." *Id.*, citing *Manis v. Hartford Fire Ins. Co.*, 1985 OK 25, 681 P2d 760, 762. "The decisive question is whether the insurer had a good faith belief at the time its performance was requested that it had justifiable reason for withholding payment under the policy." *Id.* Here, GEICO has no "justifiable reason" for withholding all of Amanda's UIM benefits since it admits that it owes at least some amount.

---

[11] GEICO admits that the Oklahoma Unfair Claims Settlement Practices Act requires it to make payment when liability becomes "reasonably clear" and that this is an insurance industry standard in Oklahoma [Ingling depo., Ex. 7, pp. 40-42, 113-116]. Nonetheless, although GEICO's liability is "reasonably clear" in this case, no payment has been made.

Under *Newport*, Oklahoma law is very clear and consistent with regard to prompt payment of partial UM benefits.   After its discussion of lowball offers, the *Newport* Court's very next proposition addressed the defendant UM carrier's failure to pay medical and funeral bills.  The Court noted that despite the demands and requests for the insurer to pay them, the defendant insurer never paid the medical or funeral bills.  *See Newport*, 11 P.3d at 197 wherein the Court stated that "USAA defends its inaction by arguing that nothing in the insurance contract required it to pay any medical or funeral bills.  It notes that no "med-pay" coverage was purchased by the Newports."  However, the Court rejected this alleged reason for non-payment of the bills and affirmed a jury verdict finding the defendant liable for bad faith.  As stated by the Court:

> **The issue is not, however, whether USAA was obligated to provide medical coverage under a provision in its contract with the Newports. Payment of the medical and funeral expenses was sought as part of the Newports' claim for the losses incurred as a result of Mr. Newport's collision with an uninsured motorist, not as med-pay coverage.  The issue is whether USAA dealt with the Newports fairly and in good faith.   USAA promised to make the uninsured motorist coverage available, made a small advance towards that end, and then refused to make further payment on the claim outside a settlement far below the dollar value placed on the claim based on its own investigation [*Id.* at 197-198] [emphasis added]**

Prompt, partial payment of UM benefits upon reasonable request has already been mandated by the Oklahoma Supreme Court in *Newport*.  It has also been mandated by the Tenth Circuit in *Hatfield*.  In that regard, the *Newport* Court's discussion on lowball offers cannot possibly be interpreted to mean that insurers are exonerated from all other duties of good faith and fair dealing, including their duty to promptly pay benefit amounts that are admittedly owed, once they have made an overall settlement offer

16

within the range of a deficient evaluation.  Neither the UM policy issued to Amanda's parents nor Oklahoma law contain any such limitation on GEICO's duty to pay benefits.

"Swift payment under a UM policy for undisputed amounts suffered by an injured insured fulfills the express purpose of [36 O.S.] § 3636 – protection of insured persons injured by uninsured/underinsured motorists." *Pentz*, 927 P.2d at 542.  That statement is just as true now as it was when the Court made it.  While GEICO can argue to the jury about what it reasonably believed it owed on Amanda's claim, it has already admitted that: 1) Amanda was fault-free; 2) Amanda was underinsured; 3) it owes Amanda something on her claim; 4) it has a duty to determine "undisputed amounts"; and 5) its adjusters are appropriately trained to make such determinations and do so every day.  Given the above, GEICO cannot seriously argue that, as a matter of law, it has no duty to pay Amanda anything under the policy unless and until she agrees with its overall evaluation, relinquishes all claims for any amounts exceeding GEICO's evaluation that she might have, and executes a release.  Such an assertion would be contrary to the most basic tenets underlying the entirety of Oklahoma's UM jurisprudence.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request entry of partial summary adjudication upon the issue of GEICO's duty to unconditionally pay the UIM benefits that it admittedly owes its insureds.

17

Respectfully submitted,

s/Steven S. Mansell
Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
MANSELL ENGEL & COLE
101 Park Avenue, Suite 665
Oklahoma City, OK 73102
Telephone: (405) 232-4100
Facsimile: (405) 232-4140
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2009, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Gerald F. Pignato (firm@pclaw.org)
Clayton B. Bruner (clayton@pclaw.org)

s/Steven S. Mansell